# Richmond

## MAUDE KIRBY, IN HER OWN RIGHT AND AS NEXT FRIEND OF LOIS MAY KIRBY GILLIAM, AN INFANT V. JUNIOUS L. GILLIAM.

December 6, 1943.

Record No. 2717.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*R. T. Armistead* and *Charles C. Berkeley*, for the appellant.

No appearance for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Maude Kirby, who is characterized in the process as suing "in her own right and as next friend of Lois May Kirby Gilliam, an infant," filed her bill of complaint in the court below against Junious L. Gilliam. The bill alleged that the plaintiff is the mother of Lois May Kirby Gilliam, who is an infant fourteen years of age, and for whom the plaintiff had theretofore maintained a home in James City county, Virginia; that on November 28, 1942, Junious L. Gilliam, an adult, unlawfully and illegally took the infant child from the custody of the plaintiff and carried her to South Mills, North Carolina, where through fraud and false misrepresentation, and in an effort to circumvent the laws of the State of Virginia, he procured a license to marry her; that while the infant, Lois May Kirby Gilliam, and Junious L. Gilliam had gone through a marriage ceremony, the

"marriage or purported marriage" was "voidable" under the laws of the State of North Carolina, and was contrary to the laws of the State of Virginia, against its public policy, and "void" in the latter State; that immediately after the marriage ceremony the parties had returned to Newport News, Virginia, where they are now living as man and wife; that by reason of her tender years the infant, Lois May Kirby Gilliam, was not capable of contracting a valid marriage; and that it was "contrary to public morals and common decency that said parties be allowed to continue to cohabit as man and wife."

The prayer of the bill was that Junious L. Gilliam be made a party defendant to the bill; that "the marriage or purported marriage" be annulled and dissolved; that the custody of the infant child be restored to the plaintiff; and that the defendant be enjoined and restrained from in any way molesting or communicating with her. The bill is signed, "Maude Kirby," and is sworn to by her before a notary public.

The defendant demurred to the bill on the grounds, among others, that the marriage was not void but was valid under the laws of both North Carolina and Virginia; that even if the marriage be voidable, it could be annulled only at the instance and request of the infant wife, and could not be annulled at the instance of the plaintiff, Maude Kirby, either in the latter's own right or as next friend of the infant wife; that the plaintiff had no legal status in her own right to seek an annulment of the marriage, nor could she "constitute herself" the next friend of the infant wife and seek an annulment of the marriage without the latter's consent; and that the wife had been emancipated by her marriage from the custody and control of her mother, the plaintiff.

The defendant also filed a plea which in substance repeated the main legal defenses asserted in the demurrer, and in addition thereto alleged that the infant wife wished the marriage to continue and that the suit had been brought without her consent and against her "will."

There was an answer and cross-bill filed by Junious L. Gilliam and the infant wife, which, however, does not appear in the printed record.

After a hearing of the matter upon the pleadings the court entered a decree overruling the plaintiff's motion to strike the defendant's plea, sustaining the demurrer and dismissing the bill. From this decree the plaintiff has appealed.

The petition for appeal states that: "The sole question involved in this appeal is whether the respondent in a suit to annul the marriage of a female child 14 years of age, which suit is brought by her mother both in her own right and as next friend of the infant, can defeat the suit by pleading that it is brought without the consent and against the will of the infant child."

Both in their brief and in the oral argument before us, appellant's counsel, without discussing the subject, have assumed that the present suit is that of the infant wife, suing by her mother as her next friend, in proper form, for the annulment of the marriage, and that the fundamental question involved is whether such a suit can be maintained without the consent and against the will of the infant.

As we see it, the record presents these questions: (1) Who is the real plaintiff in the present suit, the infant or the mother? Is this a suit by the infant, suing by her mother as her next friend, or is it a suit by the mother? (2) If the mother is the real plaintiff in the present proceeding, can she maintain, in her own right, a suit for the annulment of the marriage and for the custody of her infant daughter against the wish of her daughter and so long as the latter desires that the marriage relationship be continued?

In this State an infant wife cannot bring a suit in her own name to annul her marriage. Under Code, section 5331, she must sue for this purpose by her next friend. *Kilbourne* v. *Kilbourne*, 165 Va. 87, 88, 181 S. E. 351, 352.

In Lile's Notes to Minor's Institutes, p. 276, that distinguished author says: "In some of the states the *prochein ami* is appointed by the court, but in Virginia, and probably in most of the states, the practice is for the father, or other

near relative, to. act in that capacity, without a formal appointment; his being named as next friend in the bill or declaration, and the suit proceeding without objection, is a tacit recognition of him as such by the court." See also, *Jackson* v. *Counts*, 106 Va. 7, 11, 54 S. E. 870.

And continuing, Mr. Lile, in the same work (at page 277), says: "It seems that the consent of the infant is not necessary to authorize a suit on his behalf by the *prochein ami*, but that any person (even a stranger) may file a bill on behalf of an infant, and even against the latter's will; upon objection made, the court will order an inquiry by a master to ascertain whether the suit is for the infant's benefit or not, and whether some other person is best entitled to act as *prochein* ami, and upon the coming in of the report, the court will make such order as seems, on the whole, best for the interests of the infant."

In *Fulton* v. *Rosevelt*, 1 Paige (N. Y.) 178, 19 Am. Dec. 409-10, cited by Mr. Lile, it is said: "It is not necessary for the person prosecuting a suit in the name of the infants, to show that the same was commenced with their knowledge or consent. Any person may bring a suit in their name, as their next friend, because he does it at his peril: * * * . The only check upon this general license is, that on a proper application the court will refer it to a master to inquire whether such suit is for the benefit of the infants; and if the master reports that it is not for their benefit, or that it is not for their interest that it should be prosecuted by the particular person who has instituted the suit, the court will order the proceedings to be stayed: (citing authorities)."

See also, 27 Am. Jur., Infants, sec. 118, p. 839; *Swoope* v. *Swoope*, 173 Ala. 157, 163-4, 55 So. 418, Ann. Cas. 1914A, 937; *Wilson* v. *Smith*, 22 Gratt. (63 Va.) 493, 504-5; *Bertinelli* v. *Galoni*, 331 Pa. 73, 200 A. 58, 59, 118 A. L. R. 398.

But it is well settled that such an infant's suit must be brought in his name and not in that of the next friend— that is, the infant and not the next friend must be the real party plaintiff.

As is said by Mr. Lile in his Notes to Minor's Institutes, p. 277: "It is important to observe, that although the suit is conducted by the *prochein ami,* it must be in the *name of the infant* and not in the name of the *prochein ami.* The proper form is 'A. B. an infant under the age of twenty-one years, who sues by C. D. his father (or other person, as the case may be) and next friend.' If the suit be brought in the name of the next friend, so as to make it his suit, and not the infant's—as 'C. D. father and next friend of A. B. an infant'—the error is fatal." See also, 4 Minor's Institutes, 1st Ed., p. 1363.

■ "This means that the suit must be the *infant's suit,* and *not that of the next friend.* If in the name of the next friend '*on behalf of the infant*' it cannot be maintained. No party, infant or adult, may sue by deputy." Lile's Equity Pleading and Practice, p. 53, note 21. See also, *Morgan* v. *Potter,* 157 U. S. 195, 198, 15 S. Ct. 590, 39 L. Ed. 670; 27 Am. Jur., Infants, sec. 118, p. 838; 31 C. J. Infants, sec. 260, pp. 1117-18.

This subject was recently before the West Virginia court in *Ebbert* v. *Westfall,* 123 W. Va. 690, 17 S. E. (2d) 787. It was there held that a suit by "Mable Ebbert, next friend and guardian for the purposes of this suit of" certain infants, was a suit by Mable Ebbert and could not be maintained as one by the infants. Among the cases there relied on was *Lemon* v. *Hansbarger,* 6 Gratt. (47 Va.) 301, 302, 303, in which we held that a suit by an infant against his former guardian for an accounting must be filed in the name of the infant by his next friend and not in the name of the present guardian acting for and on behalf of the infant. To the same effect see *Sillings* v. *Bumgardner,* 9 Gratt. (50 Va.) 273, 275, also cited by the West Virginia court.

Tested by these principles it is clear that the plaintiff in the present suit is Maude Kirby and not the infant daughter. The process does not run in the name of "Lois May Kirby Gilliam, an infant, who sues by Maude Kirby, her mother and next friend," as is customary and proper in suits of this character, but runs in the name of "Maude Kirby, in her

own right and as next friend of Lois May Kirby Gilliam, an infant," as plaintiff. The characterization of Maude Kirby as "next friend of Lois May Kirby Gilliam, an infant," is merely *descriptio personae*, and does not change the personal character of the suit. *Sillings* v. *Bumgardner, supra* (9 Gratt., at page 276).

Moreover, when we consider the allegations of the bill of complaint, which have been detailed above, it is perfectly manifest that the mother, suing "in her own right", and not the infant daughter, is the real plaintiff.

That brings us to the next question. Can the mother of an infant daughter who is under the age fixed by statute for entering into the marriage relationship, maintain in her (the mother's) name and right a suit to annul the marriage and recover the custody of the daughter, without the consent of the latter?

In some States there are statutes specifically authorizing the parent to institute such a suit in his or her name.

In New York the statute authorizes the parent to institute an action for annulment, but both parties to the marriage must be made parties to the suit. *Wolf* v. *Wolf,* 194 App. Div. 33, 185 N. Y. S. 37; *Kuykendall* v. *Kuykendall,* 112 Misc. 12, 182 N. Y. S. 308.

In Oklahoma the statute permits the parent or guardian to institute such a suit for annulment. *Ross* v. *Bryant,* 90 Okla. 300, 217 P. 364, 365.

In North Carolina the parent or person standing *in loco parentis* of the female may bring an action to annul a marriage where the "special license," to be issued only upon the written consent of the parent or such person in case of the marriage of a female over fourteen years of age and under sixteen years of age, has been "procured by fraud and misrepresentation." Michie's Code. of North Carolina (1939), sec. 2494 (C. S. 2494, as amended by Pub. Laws, 1923, c. 75; 1933, c. 269; 1939, c. 375).

Statutes providing for the annulment of a marriage, at the suit of a parent, where the marriage was contracted without the parent's consent, are found in the provinces of Quebec

and Ontario. *Agnew* v. *Gober*, 17 Que. K. B. 508; *Menzies* v. *Farnon*, 18 Ont. L. Rep. 174.

■ But in the absence of such a statute, the courts appear to be unanimous in the view that a parent cannot institute in his or her own name an action for the annulment of the marriage of their child under the age of consent, but over the common-law age of seven. *In re Hollopeter*, 52 Wash. 41, 100 P. 159, 132 Am. St. Rep. 952, 21 L. R. A. (N. S.) 847, 17 Ann. Cas. 91 (the leading case on the subject); *Sawyer* v. *Slack*, 196 N. C. 697, 146 S. E. 864, 866; *Shepherd* v. *Shepherd*, 174 Ky. 615, 192 S. W. 658, 659; *Ex parte Nolte* (Tex. Civ. App.), 269 S. W. 906, 907; *Ridgely* v. *Ridgely*, 79 Md. 298, 29 A. 597, 25 L. R. A. 800; *McKinney* v. *Clarke*, 32 Tenn. (2 Swan) 321, 58 Am. Dec. 59.

■■ These decisions are based upon the principle that a marriage by one under the age fixed by statute, but over the common-law age of seven, is voidable and not void, in the absence of a statutory provision expressly declaring that it shall be absolutely void;[1] that ordinarily, so long as the parties to the marriage so desire, it is to the best interest of society that the marriage relationship be sustained; and that by such marriage, and prior to its annulment, the infant consort is emancipated from his or her parents' custody and control.[2]

The facts in *Sawyer* v. *Slack, supra*, are strikingly similar to those here. There a girl between the age of fourteen and sixteen years, and living with her mother in Virginia, went with a young man to North Carolina where they procured a license without the consent of the girl's parents, and were married. The mother, suing as such and as the next friend

---

[1] 2 Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th Ed., section 1123, p. 1383; 35 Am. Jur., Marriage, section 103, pp. 245, 246, citing numerous authorities; 132 Am. St. Rep. 958, note; 17 Ann. Cas. 94, note; *Sawyer* v. *Slack, supra* (146 S. E., at page 865.)

[2] 1 Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th Ed., section 808, p. 902; 39 Am. Jur., Parent and Child, section 65, p. 706; 46 C. J., Parent and Child, section 197, p. 1345; 113 Am. St. Rep. 118, note.

of the infant, and the register of deeds who had issued the license, sued to annul the marriage. It was held that such suit could not be maintained by either the parent or the register of deeds.

In Virginia, under Code, section 5078 (as amended by Acts 1938, ch. 81, p. 141; Acts 1940, ch. 217, p. 344; Acts 1942, ch. 14, p. 15), a person under twenty-one years of age who has not been previously married, is permitted to marry with the consent of his or her father, mother, or guardian, or if there be none, the judge of a specified court.

Under Code, section 5090 (as amended by Acts 1932, ch. 300, p. 529; Acts 1942, ch. 176, p. 230), with certain exceptions which are not here material, "The minimum age at which minors may marry, with consent of the parent or guardian, shall be eighteen for the male and sixteen for the female. * * * "

This latter statute (section 5090), as found in the Code of 1919, and in the Code of 1887 (section 2254), fixed the age of consent of the male at fourteen years and that of the female at twelve years, and expressly provided that when either of the parties was under the age of consent, "if they shall separate during such non-age, and not cohabit afterwards, the marriage shall be deemed void, without any decree of divorce, or other legal process." By the subsequent amendments the General Assembly has raised the age of consent and has stricken out the provision declaring that the marriage of a person under the age of consent, followed by separation, "shall be deemed void".

Now, neither in this statute nor in any other is there any provision declaring that marriages of persons under the age of consent are absolutely void. On the other hand, we have statutes expressly providing that certain other marriages are "absolutely void" without any decree of divorce or other legal process. Code, section 5087; Michie's Code of 1942, section 5088b (Acts 1920, ch. 157, p. 231, as amended by Acts 1922, ch. 280, p. 470).

Therefore, in the absence of a statutory provision declaring the marriage here under consideration to be abso-

lutely void, the general principles to which we have referred apply, and the marriage is not void but voidable only.

Neither do we have in this State any statute which authorizes the parent of an infant child who marries without his or her consent, to maintain a proceeding to annul such marriage. ·On the contrary, Code, section 5100, provides that: "When a marriage is supposed to be void for any of the causes mentioned either in section five thousand and eighty-seven, five thousand and eighty-eight, five thousand and eighty-nine or five thousand and ninety, *either party may*, except as is provided in the next section, *institute a suit for annulling the same;* * * * ." (Italics supplied.)

Code, section 5101, provides that: "A *party* who, at the time of such marriage as is mentioned in section five thousand and ninety, was capable of consenting, with a party not so capable, *shall not be permitted to institute a suit* for the purpose of annulling such marriage." (Italics supplied.)

It follows from what we have said that the plaintiff, the mother of the infant consort, cannot maintain in her own name the present action to annul the marriage of her daughter. Such suit must be instituted in the name of the infant, suing by her next friend.

Neither can the mother, in her own right, maintain the present suit for the custody of her daughter, for the reason that until the marriage has been annulled in a proper proceeding, it is presumed to be valid and has emancipated the infant daughter from the custody of her parents. 1 Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th Ed., section 808, p. 902; 113 Am. St. Rep. 118, note; *Commonwealth* v. *Graham*, 157 Mass. 73, 31 N. E. 706, 34 Am. St. Rep. 255, 16 L. R. A. 578; *Aldrich* v. *Bennett*, 63 N. H. 415, 56 Am. Rep. 529; *State* v. *Lowell*, 78 Minn. 166, 80 N. W. 877, 79 Am. St. Rep. 358, 46 L. R. A. 440.

In our opinion, therefore, the trial court was correct in sustaining the demurrer to the bill in its present form.

The next question arises as to whether the defect in the bill may be cured by an amendment substituting the

infant daughter, suing by her mother and next friend, in the place of the mother, who, as we have seen, has sued in her own right.

The precise question was dealt with in *Ebbert* v. *West-fall, supra,* and the West Virginia court held that the defect was fatal and could not be cured in that manner. It was there pointed out (17 S. E. (2d) at page 789):

" * * * Nor can the defect in the bill be considered a mere 'technicality'. By universal practice and mere common sense, a suit must be in the name of the person whose interests are involved, in this case, the infants. A next friend has no possible interest in the litigation. His sole place in the proceeding is to lend his own legal capacity to the infant defendants, and to assume responsibility for costs and the conduct of the suit. He acts much as an attorney at law, or an agent, but is in no sense a substitute for the actual parties in interest. * * * "

In *Lemon* v. *Hansbarger, supra,* this court held that a bill which was filed in the name of the guardian and which should have been filed in the name of the infants, suing by their next friend, should be dismissed without prejudice to the institution of the suit by the proper parties in the proper form. See also, *Stewart* v. *Thornton,* 75 Va. 215, 221; *Keyser* v. *Renner,* 87 Va. 249, 250-1, 12 S. E. 406; *Ellis* v. *Whitacre,* 106 Va. 1, 6, 54 S. E. 993, holding that a suit instituted by a plaintiff having no right of action must be dismissed without prejudice to the real claimant to prosecute his lawful demand.

In *Kilbourne* v. *Kilbourne, supra,* a suit for annulment was instituted by the infant wife in her own name. After holding that it could not be maintained in that form, we remanded the case to the lower court in order that it might proceed in the name of the infant suing by her next friend. But there no substitution of the plaintiff was necessary. The infant was the real party plaintiff in the original suit and would continue as such after the suggested amendment.

The decree appealed from, which dismisses the bill in its present form, is affirmed, but without prejudice to the

right of the next friend of the infant, Lois May Kirby Gilliam, to file a bill in the name of the infant to annul the marriage. In such a proceeding, as we have seen, the consent of the infant is not necessary, because it is not for the infant or the next friend to say, but for the court to determine, whether, under all the circumstances, it will be for the best interest of the infant that the marriage be annulled.

*Affirmed.*

GREGORY, J., dissenting.

The opinion of the majority concedes the right of the mother to maintain the suit for her infant daughter, without the latter's consent, provided she brings it in the name of the infant by her as her next friend. This in substance is what has been done.

To dismiss the suit simply because the caption styles the complainant "Maude Kirby, in her own right and as next friend of Lois May Kirby Gilliam, an infant" is carrying the enforcement of technical rules of procedure entirely too far.

In this case, "in her own right" may be regarded as surplusage and stricken out of the caption. There would still remain "Maude Kirby, as next friend of Lois May Kirby Gilliam, an infant". When this caption or style of the suit is considered with the allegations of the bill, it is quite clear that the suit in fact is one by the infant suing by her mother and next friend.

In Virginia, we have no decided case upon the precise point. Mr. Lile, in his notes on Equity Pleading and Practice, in a footnote on page 28 says that the suit must be the infant's suit and not that of the next friend.

Our statute (Code, section 5331) simply provides that "any minor entitled to sue may do so by his next friend". It does not prohibit the institution of such a suit as the one here. This suit is the suit of the infant. It could not be the

suit of the mother in her own right. *Kilbourne* v. *Kilbourne*, 165 Va. 87, 181 S. E. 351.

The defect was purely formal and should have been corrected by amendment. The suit should not have been dismissed.

There was no objection made to the mother designating herself as next friend to the infant. Nothing in the record shows that she was not a proper person to act in this representative capacity. The court did not dismiss the bill because she was not a fit and proper person to act as next friend. It impliedly accepted her.

The case was decided in the lower court upon the motion to strike out the plea in bar and in that plea the form of the suit was not questioned by the defendant. He simply averred that the suit could not be maintained because the daughter did not request the suit to be brought; that it was against the will of the infant, and that the marriage is valid and not void or voidable.

The demurrer filed by the defendant was not ruled upon because the suit was dismissed by sustaining the plea in bar.

An infant is a ward of the court and he can always rely upon the court to protect his personal rights and property whenever they are in jeopardy. This is true though a suit has been instituted by the infant by his next friend *without* his consent and even against his will.

The sole function of the next friend is to protect the interest of the infant. He is purely a representative, nothing more. When he is actually in court in that capacity, what difference is it whether he is styled as suing in the name of the infant by him as next friend or suing as next friend for the infant? In either event the infant is the real party in interest; not the next friend.

It seems to me that the majority is sacrificing substance for form.